UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAWRENCE W. HAMMARE,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, and T-MOBILE USA, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-30155 MAP

## MEMORANDUM OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant The Prudential Insurance Company of America ("Prudential") hereby moves for judgment on the pleadings as to count I of the Complaint pursuant to Fed. R. Civ. P. 12(c), and in support of its motion states as follows.

Plaintiff alleges that the Court has jurisdiction over this matter under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. (Complaint ¶ 4.)  In his Complaint the plaintiff seeks benefits under a short-term disability insurance plan ("Plan") established and maintained by his employer, defendant T-Mobile USA, Inc.  (Count II of Complaint.)  In addition to his employer, plaintiff also alleges that Prudential is liable for payment of the short-term disability ("STD") benefits because it administered the Plan.  (Count I of Complaint.).

Prudential maintains that it is entitled to judgment on the pleadings because it merely administers the self-insured Plan.  As such, Prudential is not a proper defendant because it only makes recommendations to the employer/ plan administrator regarding the payment of STD benefits.  Therefore, Prudential is not a fiduciary with regard to the payment of STD benefits.

## **STATEMENT OF FACTS**[1]

The plaintiff is employed by T-Mobile USA, Inc. ("T-Mobile") as a salesperson, and was so employed in July 2004 when he injured his back. (Complaint ¶¶ 6-7.) As an employee benefit T-Mobile offers group short-term disability insurance to its qualified employees. (Complaint ¶¶ 18-19.) The Plan sponsored by T-Mobile is administered by Prudential. (Complaint ¶ 24.) The benefits available under the STD plan are funded solely by T-Mobile. See T-Mobile USA, Inc. Short Term Disability Plan at 1, a true and accurate copy of which is attached hereto as Exhibit "1." The rights and responsibilities of T-Mobile and Prudential regarding to the administrative services provided by Prudential in connection with the Plan are set forth in Administrative Services Agreement No. 41982 ("ASA"). A true and accurate copy of the ASA is attached hereto as Exhibit "2."

After injuring his back the plaintiff experienced difficulty meeting his sales quota due to his inability to travel by automobile. Thereafter he began treating with a physician with regard to the back pain he was experiencing. (Complaint ¶¶ 9-11.) The plaintiff's physician opined that he was "unable to perform the essential job duties of his occupation" due to his back problems and the plaintiff ceased working on December 26, 2004. (Complaint ¶¶ 12-13.) The plaintiff returned to work following the Plan's 12 week maximum STD period. The plaintiff submitted a claim for STD benefits in December 2004. That claim and subsequent appeal were denied (Complaint ¶¶ 14-15.) The plaintiff commenced this lawsuit on June 28, 2005.

---

[1] / For purposes of this motion only, Prudential accepts as true the following facts.

## ARGUMENT

**I.    Plaintiff's Claim Against Prudential Is Ripe For Resolution By Judgment On The Pleadings.**

After the pleadings are closed, a party may move for judgment on the pleadings if no material facts remain at issue and the dispute can be resolved on the pleadings and those facts of which the court can take judicial notice.[2]  Fed. R. Civ. P. 12(c).  The standard for evaluating a motion filed pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion.  Pasdon v. City of Peabody, 330 F.Supp.2d 22, 24 (D. Mass. 2004); Petricca v. City of Gardner, 194 F.Supp.2d 1, 4 (D.Mass. 2002); Furtick, et al., v. Medford Housing Authority, et al., 963 F.Supp. 64, 67 (D.Mass. 1997).  "[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1998) (citations omitted).  However courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element necessary to sustain recovery.  Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992).  Bald assertions, unsupportable conclusions, circumlocutions, and the like need not be credited. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1999); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  When the facts alleged, if proven, will not justify recovery then the court may order dismissal under Rule 12(c). Cooley v. Mobile Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

---

[2] /  The defendants have filed answers without cross-claims or counterclaims, thereby closing the pleadings. See Fed. R. Civ. P. 7(a).

3

Although the plaintiff did not attach the T-Mobile USA, Inc., Short Term Disability Plan or the ASA to the Complaint, and the Court is ordinarily limited to reviewing only the pleadings in the context of a Rule 12 motion, Prudential contends that it is proper for the Court to consider those documents here without converting this motion into one for summary judgment. As long as authenticity is not disputed, courts will consider "documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint." Waterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Estate of Castucci ex rel. Castucci v. U.S., 311 F.Supp.2d 184,187 n.7 (D. Mass 2004); McCree v. Pension Benefit Guarantee Corp., 2004 WL 3409786 *2 (D.Mass. 2004). When "'a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001)(quoting Bedall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).

Here, the plaintiff seeks STD benefits afforded to qualified Plan participants. (Complaint ¶¶ 14, 18, 20, 21, 24, 25, 27 and 28.) The Complaint makes reference to the Plan on many occasions, and it also notes that Prudential administers the Plan on behalf of T-Mobile. (Complaint ¶ 24.) Therefore, the Court may consider the T-Mobile USA, Inc. Short Term Disability Plan and the ASA in connection with this Rule 12 motion because the Complaint's factual allegations are expressly linked to and dependent upon those documents. Moreover, the authenticity of those documents is unchallenged.[3]

---

[3] / The parties have agreed that the T-Mobile USA, Inc. Short Term Disability Plan and the ASA are properly part of and are to be included in the administrative record in action.

The pleadings are closed and there are no material facts that remain at issue. As will be shown below, Prudential is entitled to judgment as a matter of law and the Court should enter judgment in its favor under Rule 12(c).

## II.  Prudential Is Not A Proper Party Because It Had Neither Discretionary Authority Nor Discretionary Control Over Plan Assets Or STD Benefits.

Count I of the Complaint fails to state a cognizable claim because Prudential is not a Plan fiduciary with regard to the payment of STD benefits. The plaintiff alleges that Prudential violated the provisions of ERISA in refusing to pay him STD benefits. (Count I of the Complaint.) ERISA provides participants and beneficiaries with standing to bring civil actions to recover benefits "due ... under the terms of [the] plan, to enforce ... rights under the terms of the plan, or to clarify ... rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). However, ERISA does not subject a third-party claim administrator like Prudential to liability merely because it provided administrative support and claim services to a self-funded employee insurance plan. See Terry v. Bayer Corp., 145 F.3d 28, 35- 36 (1st Cir. 1998)(a third party claim administrator is not a fiduciary of the plan and thus is not amenable to suit under ERISA); Kodes v. Warren Corporation, 24 F.Supp.2d 93 (D.Mass. 1998)(third party claim administrator for plan held not to be fiduciary where administrator merely processed claims while employer retained final authority and responsibility for plan and its operation); Santana v. Deluxe Corp., 920 F.Supp. 249, 254 (D.Mass. 1996)("where an employee benefit plan has contracted with a third party to provide claims processing and other administrative services to the plan, but has retained discretion to decide disputed claims, courts have universally ruled that the service provider is not a fiduciary of the plan.")

5

Prudential is not a proper party because it is not a fiduciary with regard to the payment of STD benefits. "ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries. With narrow exception, however, ERISA does not authorize actions against nonfiduciaries of an ERISA plan." Terry, 145 F.3d at 35 (quoting Santana, 920 F.Supp. at 253.) It is well settled that "'[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan. Id. at 36.

ERISA states that a person is a fiduciary with respect to a plan to the extent "(i) he... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advise for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(emphasis added.) It is important to keep in mind that "'[f]iduciary status is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control.'" Terry, 145 F.3d at 38 (quoting Bedall, 137 F.3d 18 (1st Cir. 1998). Thus, a person may function as a fiduciary while performing certain tasks for an ERISA-governed plan, though he may not be a fiduciary while performing others.

The First Circuit has held that plan participants, such as the plaintiff, are not permitted to bring suit against third party service providers under ERISA where the plan administrator retains final authority over claim decisions. See Terry, 145 F.3d at 35-36. In addressing this issue the First Circuit stated:

> Courts have determined that when the plan administrator
> retains discretion to decide claim disputes, a third party
> service provider, such as Northwestern, is not a fiduciary of
> the plan, and thus not amenable to a suit under §
> 1132(a)(1)(B). *See, e.g., HealthSouth Rehad. Hosp. v.
> American Nat'l Red Cross*, 101 F.3d 1005, 1008-09 (4th
> Cir. 1996, cert. denied, 502 U.S. 1264, 117 S.Ct. 2432, 138
> L.Ed.2d 194 (1997); *Haris Trust & Sav. Bank v. Provident
> Life & Accident Ins. Co.*, 57 F.3d 608, 613-14 (7th Cir.
> 1995); *Kyle Rys., Inc. v. Pacific Admin. Servs., Inc.*, 990
> F.2d 513, 516 (9th Cir. 1993); *Baker v. Big Star Div. Of The
> Grand Union Co.*, 893 F.2d 288, 289-90 (11th Cir. 1989).
> An interpretive bulletin issued by the Department of Labor
> bears this out, stating that an entity which merely processes
> claims "is not a fiduciary because such person does not
> have discretionary authority or discretionary control
> respecting management of the plan." 29 C.F.R. § 2509.75-
> 8, D-2 (1997).

Terry, 45 F.3d at 35. "When a plan administrator retains discretion to determine the

outcome of disputed claims, a third party administrator, even one who makes the initial

claim determination, is not a fiduciary." Kodes, 24 F.Supp.2d at 101.   In the present

case, although Prudential sent claim notification letters to Plan participants, it is well-

established that communicating with employees regarding plan benefits is a function

typically performed by a claims processor, and not indicative of fiduciary status.

Santana, 920 F.Supp.2d at 257.

Moreover, the First Circuit has recognized that ERISA itself limits the liability of

service providers in actions under the statute.  Reich v. Rowe, 20 F.3d 25 (1st Cir.

1994)(allowing that non-fiduciaries may only be sued for engaging in an "act or practice"

proscribed by section 1106(a)(1)).   In Rowe, the First Circuit refused to fashion a

common law remedy to extend "the threat of liability over the heads of those who only

lend professional services to a plan without exercising any control over, or transacting

with, plan assets." Id. at 29.  The court reasoned that creating such liability would likely

deter such third party service providers from "helping fiduciaries navigate the intricate financial and legal thicket of ERISA." Id.

In the instant matter, the plan sponsor, T-Mobile, is also the plan administrator. See 29 U.S.C. 1002(16)(A)(ii).[4] As the Plan's third party claim administrator Prudential performed ministerial functions in accordance with the ASA. The ASA provides, in part, that "Prudential is empowered to act on behalf of [T-Mobile] in connection with the Plan only as expressly stated in [the ASA] or as agreed to in writing by Prudential and [T-Mobile]." (Exhibit 2 at LH0040.) Through the ASA, T-Mobile delegated certain fiduciary responsibilities to Prudential relating to the review of claims, but the ASA plainly states that "Prudential will have no other fiduciary duties under the Plan." (Exhibit 2 at LH0040.) Moreover, like the third party administrator in Santana, Prudential "is powerless to alter, modify, or waive any terms or conditions of the Plan." Santana, 920 F.Supp.2d at 254.

In the ASA, T-Mobile "retain[ed] complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder...." (Exhibit 2 at LH0040)(emphasis added). T-Mobile retained "the sole and complete authority to determine eligibility of persons to participate in the Plan." (Exhibit 2 at LH0040.) The power to act for a plan and institute plan policies is essential to status as a fiduciary under ERISA. Santana, 920 F.Supp.2d at 256. The power to make eligibility determinations is indicative of fiduciary status. Id. Since T-Mobile retained complete authority over eligibility determinations, the operation of the Plan, and STD benefits, Prudential does not possess the requisite discretionary authority and discretionary control required for fiduciary status with respect to the function at issue here, namely, the payment of

---

[4] / In those instances where the plan does not expressly designate an administrator, the plan sponsor is deemed to be the plan administrator. Here, T-Mobile is the plan sponsor. 29 U.S.C. 1002(16)(B)(i).

benefits. In the First Circuit, fiduciary status turns on the nature of the task performed. See Terry, 145 F.3d at 38.

T-Mobile pays all STD benefits. T-Mobile established and funds a bank account out of which all STD claims are paid. Hence, all benefits are drawn from T-Mobile's funds, rather than Prudential's. (Exhibit 2 LH0041). T-Mobile has complete authority over the operation of the Plan and its assets. Since it funds the Plan, T-Mobile can choose to pay any claim it wishes regardless of Prudential's recommendation. This shows, perhaps more than any other single fact, that Prudential is not a fiduciary with regard to the payment of claims because it lacks discretionary authority and discretionary control. Santana, 920 F.Supp.2d 254.

Further, Prudential's ability to make initial recommendations to T-Mobile regarding the eligibility for and amount of benefits does not render it a fiduciary with respect to the payment of claims. Kodes, 24 F.Supp.2d at 101. Making recommendations to a plan sponsor respecting plan administration is not indicative of fiduciary status. Santana, 920 F.Supp.2d at 256; Toomey v. Jones, 855 F.Supp. 19, 23-25 (D. Mass. 1994); 29 C.F.R. § 2509.75-8(D-2). Like the plan sponsor in Kodes, T-Mobile "retained final authority and responsibility for the Plan and its operation." Id. (citation omitted).

T-Mobile has contracted with Prudential for the purpose of obtaining claims processing and other administrative services. Under the terms of the ASA, T-Mobile, as Purchaser, has retained control over the Plan's assets and it has the right to make final claim determinations, Prudential's advice notwithstanding. Prudential's claim staff merely assists T-Mobile in administering claims. Prudential is not a fiduciary of the Plan with respect to the payment of STD benefits, T-Mobile can decide whenever it wants to

pay any claim out of its own funds. Thus, Prudential is not amenable to suit under

ERISA. Inasmuch as the plaintiff is seeking Plan benefits from Prudential, count I fails

to state a claim and should be dismissed pursuant to Rule 12(c).

## CONCLUSION

Based on the forgoing, Prudential respectfully requests that the Court grant this

motion for judgment on the pleadings.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorney,

Edward P. O'Leary, BBO #551932
Fitzhugh, Parker & Alvaro LLP
155 Federal Street
Boston, MA 02110
(617) 695-2330

Date: September 21, 2005

## CERTIFICATE OF SERVICE

I certify that on this 21st day of September, 2005 I served a copy of the above
document on counsel of record, as set forth below, by electronic filing and by first class
mail, postage prepaid.

Judd L. Peskin, Esq.                    Jay M. Presser, Esq.
Peskin, Courchesne & Allen, P.C.        Amy B. Royal, Esq.
101 State Street, Suite 310             Skoler, Abbott & Presser, P.C.
Springfield, MA 01103                   One Monarch Place
                                        Springfield, MA 01144

                                        /s/ Edward P. O'Leary
                                        Edward P. O'Leary

10

# T-Mobile USA, Inc.

**Short Term Disability Plan**
**(Administered by Prudential Insurance Company of America)**

LH0017

# Benefit Highlights

## SHORT TERM DISABILITY PLAN

The Short Term Disability Plan is provided for you by T-Mobile USA, Inc. T-Mobile USA, Inc. has arranged to have your claims administered by The Prudential Insurance Company of America. Prudential (as the claims administrator) determines the benefits for which you qualify under the plan.

The Short Term Disability Plan provides financial protection by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

**Program Date:** June 1, 2003

**Program Number:** 41982

**Covered Classes:** All Employees. Employees must reside in the United States or must be a T-Mobile employee on an approved foreign assignment to participate.

**Minimum Hours Requirement:** Employees must be working at least 30 hours per week.

**Employment Waiting Period:** An Employee working in a covered class will become a participant in the Plan on the first day of the month coincident with or immediately following the Employee's completion of six months of active employment with the Employer. Active employment means that you are performing the main duties of your job on a regular basis with the Employer.

**Elimination Period:** 7 calendar days for disability due to accident; 7 calendar days for disability due to sickness.

**Benefits begin the day after the Elimination Period is completed.**

**Weekly Benefit:** 60% of your weekly earnings, but not less than $25 nor more than $2,300. Weekly earnings is the average of your weekly pay over the four months ending on the disability date. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00.

Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered under this plan.

**Maximum Period of Benefits:** 12 weeks of benefits.

**Cost of Coverage:** The Short Term Disability Plan is provided to you on a non-contributory basis. The entire cost of your benefits under the Plan is being paid by your Employer out of its general assets. Payments are made when and as due based on the terms of the Plan.

**The above items are only highlights of your coverage. For a full description please read this entire Summary Plan Description. In the case of a conflict between the terms of this Summary Plan Description, including the Benefit Highlights section and the Plan, the terms of the Plan will be controlling.**

LH0018

# Table of Contents

BENEFIT HIGHLIGHTS - SHORT TERM DISABILITY PLAN ...................................................1

GENERAL PROVISIONS...................................................................................................3

SHORT TERM DISABILITY COVERAGE - BENEFIT INFORMATION .................................6

SHORT TERM DISABILITY - CLAIM INFORMATION.......................................................14

GLOSSARY...................................................................................................................17

LH0019

# General Provisions

## General Definitions used throughout this Summary Plan Description include:

*You* means a person who is eligible for coverage under the Plan.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement and is either residing in the United States or on an approved foreign assignment.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the first day of the month coincident with or immediately following the date you complete your *employment waiting period*.

*Employment waiting period* means the continuous period of time that you must be in a covered class and complete six months of active employment before you are eligible for coverage under a plan.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in *active employment* on that date.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material duties of your regular job. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel, except that a foreign worksite will not qualify unless you remain a resident of the United States or are on an approved foreign assignment.

Normal vacation is considered active employment.

Temporary workers are excluded from coverage.

LH0020

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

## What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence your coverage will begin on the date you return to active employment.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary **layoff**, and if any required contribution is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if any required contribution is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

## Continuation of Coverage During Family and Medical Leave (FMLA) and related State Leaves

The Family and Medical Leave Act of 1993 (FMLA) requires Employers to provide up to a total of 12 weeks of unpaid, job protected leave during any rolling 12-month period to eligible Employees for certain family and medical reasons. This Act applies to employers with 50 or more employees for at least 20 workweeks in the current or preceding calendar year. The following are some definitions identified by the FMLA:

- Eligible - An individual who has been employed by the employer for at least 12 months and has performed at least 1,250 hours of service during the previous 12-month period.
- Serious Health Condition - An illness, injury, impairment, or physical or mental condition that involves; (a) inpatient care in a hospital, hospice or residential medical care facility, or (b) continuing treatment by a health provider.

Although employers are not required to extend disability coverage during an approved FMLA leave, T-Mobile USA, Inc. has chosen to continue benefits during an approved FMLA leave. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

This provision is intended to comply with the Act and any pertinent regulations, and they govern its interpretation. Contact the T-Mobile USA, Inc. Benefits Department or refer to your Employee Handbook to find out details about how this continuation applies to you.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff or leave of absence.

LH0021

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will apply on the date you return to active employment. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which T-MOBILE USA, INC. is liable under the terms of the Plan.

## When Does Your Coverage End?

Your coverage under the Program or a plan ends on the earliest of:

- the date this Plan ends;

- the date on which employment stops;

- the date on which your active employment stops. See "Once Your Coverage Begins, What Happens if You Are Temporarily Not Working?" and "Continuation of Coverage During Family and Medical Leave (FMLA)" above;

- the date the person stops being an eligible employee;

- the date on which the Employee enters into military service, other than for duty of less than 31 days.

If you are disabled on the day your short term disability coverage ends, and if you remain disabled long enough to qualify, your Employer will pay benefits according to the Plan.

LH0022

# Short Term Disability Coverage

## BENEFIT INFORMATION

### How Is Disability Defined?

You are disabled when:

- you are unable to perform at least one of the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*;

- you are under the regular care and attendance of a doctor; and

- you have a 20% or more loss in weekly earnings due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

You may be required to be examined by specified doctors, other medical practitioners or vocational experts. Your Employer will pay for these examinations. Examinations may be required as often as it is reasonable to do so. You may also be required to be interviewed by an authorized representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, you will be considered able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Your occupation will be looked at as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause, such as an injury that is self-inflicted. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

### How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Your disability will be treated as continuous if your disability stops for 5 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

LH0023

Your elimination period for disability due to an accident which begins while you are covered is 7 calendar days; your elimination period for disability due to a sickness which begins while you are covered is 7 calendar days.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits under the Plan.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when your claim is approved, providing the elimination period has been met. You will be sent a payment every two weeks for any period for which your Employer is liable.

## How Much Will You Be Paid If You Are Disabled and Not Working?

This process will be followed to figure out your *weekly payment*:

1. Multiply your weekly earnings by 60%. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00.

2. The maximum weekly benefit is $2,300 and the minimum is $25.

3. Compare the answer in item 1 with the maximum weekly benefit. The lesser of these two amounts is your gross disability payment.

4. Subtract from your gross disability payment any deductible sources of income.

That amount figured in item 4 is your weekly payment.

After the elimination period, if you are disabled for less than 1 week, you will be sent 1/7 of your payment for each day of disability.

*Weekly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Weekly benefit* means the total benefit amount for which you are covered under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before any deductible sources of income and disability earnings are subtracted.

*Deductible sources of income* means income from deductible sources listed in the Plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

LH0024

## What Are Your Weekly Earnings?

Weekly earnings include your current gross wages at time of disability, plus the average of your weekly commissions received over the four-month period prior to your disability. Weekly earnings does not include income received from bonuses, overtime pay, reimbursement or expense allowance, or any other extra compensation from your Employer, or income received from sources other than your Employer.

## What Will Be Used to Determine Weekly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, your average weekly earnings from your Employer in effect for the four month period just prior to the date your absence begins will be used.

## How Much Will You Be Paid If You Work While You Are Disabled?

You will be sent the full gross disability payment if you are disabled and your weekly *disability earnings*, if any, are less than 20% of your weekly earnings and you have no income from deductible sources.

If you are disabled and your weekly disability earnings are from 20% through 80% of your weekly earnings, you will receive payments based on the percentage of income you are losing due to your disability.  This process will be followed to figure out your gross disability payment:

1.  Subtract your disability earnings from your weekly earnings.

2.  Divide the answer in item 1 by your weekly earnings.  This is your percentage of lost earnings.

3.  Multiply your weekly payment as shown above by the answer in item 2.

This amount, less income from deductible sources (as discussed below), will be paid for each week of your disability up to the maximum number of weeks available under the Plan.

You may be required to send proof of your disability earnings each week.  Your weekly payment will be adjusted based on your disability earnings.  As part of your proof of disability earnings, you may be required to send appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which are necessary to substantiate your income.

You will not be paid for any week during which disability earnings exceed 80% of weekly earnings.

---

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to the greatest extent possible.  This would be the greatest extent of the material duties for your work, based on your restrictions and limitations, that you are able to do in your regular job.

---

LH0025

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from week to week, your disability earnings may be averaged over the most recent 3 weeks to determine if your claim should continue subject to all other terms and conditions in the plan.

If your disability earnings are averaged, your claim will end if the average of your disability earnings from the last 3 weeks exceeds 80% of weekly earnings.

You will not be paid for any week during which disability earnings exceed 80% of weekly earnings.

## What Are Deductible Sources of Income?

Employer will deduct from your weekly gross disability payment gross income from the following deductible sources:

1. The amount that you receive or are entitled to receive as loss of time benefits under:

    (a) a workers' compensation law;

    (b) an occupational disease law; or

    (c) any other *act* or *law* with similar intent.

2. The amount that you receive or are entitled to receive as loss of time disability income payments under any:

    (a) state compulsory benefit act or law;

    (b) No-fault automobile liability insurance policy;

    (c) other group disability benefits plan; or

    (d) governmental retirement system as the result of your job with your Employer.

3. The amount that you:

    (a) receive as disability payments under your Employer's *retirement plan;*

    (b) voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

    (c) receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the Plan will also be considered as a retirement benefit.

LH0026

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Employer will use the definition of eligible retirement plan as defined in Section 402(c) of the Internal Revenue Code of 1986, as amended, including any future amendments which affect the definition.

4.  The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

5.  The amount that you receive from a partnership, proprietorship or any similar draws. With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security primary insurance amount if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan* or *act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Employer will not deduct from your weekly gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;

- profit sharing plans;

- thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

- a retirement plan from another Employer;

- individual retirement accounts (IRA).

LH0027

## What If Subtracting Deductible Sources o Income Results in a Zero Benefit? (Minimum Benefit)

The minimum weekly payment is $25.00.

This amount may be applied toward an outstanding overpayment.

## What Happens When You Receive a Cost of Living Increase from Deductible Sources of Income?

Once Employer has subtracted any deductible source of income from your weekly gross disability payment, Employer will not further reduce your payment due to a cost of living increase from that source.

## What If Employer Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1 or 2 in the What are Deductible Sources of Income? section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1 or 2 in the What are Deductible Sources of Income? section if you:

- apply for the benefits;

- appeal any denial to all necessary administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all administrative appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a weekly basis over the time period for which the sum was given. If no time period is stated, the sum will be pro-rated on a weekly basis to the end of the maximum period of payment.

## How Long Will Payments Continue to Be Sent to You?

A payment will be sent to you every two weeks up to the *maximum period of payment*. Your maximum period of payment is 12 weeks during a continuous period of disability. Payments will stop when the disability ends, even if that is before 12 weeks of benefits have been paid.

LH0028

Payments will no longer be sent to you and your claim will end on the earliest of the following:

1. When you are able to work in your regular occupation on a *part-time basis* but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the Plan.

4. The date you fail to submit satisfactory proof of continuing disability.

5. The date your disability earnings exceed the amount allowable under the Plan.

6. The date you die.

*Maximum period of payment* means the longest period of time payments will be made to you for any one period of disability.

*Part-time basis* means the ability to work and earn between 20% and 80% of your weekly earnings.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot;

- commission of a crime for which you have been convicted under state or federal law; or

- *occupational sickness or injury.*

Your Plan does not cover a disability due to war, declared or undeclared, or any act of war.

A payment will not be made for any period of disability during which you are incarcerated as a result of a conviction.

*Occupational sickness or injury* means an injury arising out of, or in the course of, any work for wage or profit regardless of employer, or a sickness covered, with respect to such work, by any workers' compensation law, occupational disease law or similar law.

## What Happens If You Return to Work Full Time and You Become Disabled Again?

1. If your current disability is related or due to the same cause(s) as your prior disability for which you received a payment:

   Your current disability will be treated as part of your prior claim and you will not have to complete another elimination period if you return to active employment for your Employer on a full time basis for 14 consecutive days or less. Your disability will be subject to the same terms of the plan as your prior claim.

12

LH0029

2.  If your current disability is unrelated to your prior disability for which you received a payment:

    Your current disability will be treated as a new claim and you will have to complete another elimination period.  Your disability will be subject to all of the plan provisions.

If you become covered under any other group Short Term Disability Plan, you will not be eligible for payments under this plan.

LH0030

# Short Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential (as the Claims Administrator) of a Claim?

Your Employer has arranged to have Prudential (as the claims administrator) determine the benefits for which you qualify under the plan. You are encouraged to notify Prudential of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from Prudential. If you do not receive the form within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify Prudential immediately when you return to work in any capacity.

### How Do You File a Claim?

Prudential has a telephonic claim submission process. You must contact Prudential at (866) 62MYLOA to initiate the claim process.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

1. That you are under the *regular care* and attendance of a *doctor*.

2. The appropriate documentation of your weekly earnings.

3. The date your disability began.

4. Appropriate documentation of the disabling disorder.

5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

6. The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

7. The name and address of any doctor you have seen.

Prudential may request that you send satisfactory proof of continuing disability, indicating that you are under the regular care and attendance of a doctor. This proof, provided at your expense, must be received within 30 days of a request by Prudential.

LH0031

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Your claim may be denied or payments may stop if the appropriate information is not submitted.

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse will not be recognized as a doctor for a claim that you send to Prudential.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Payments Be Made To?

Payments will be made to you.

## What Happens If Your Claim is Overpaid?

Any overpayments due to any of the following reasons may be recovered:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse the overpayment in full. You will be told the method by which you must repay the overpaid amount.

You will not be required to repay more money than the amount you were paid.

LH0032

## How to Appeal a Claim

In order to appeal a denial of Plan benefits, you must follow the procedures established by the Plan Administrator, your Employer.

If a request for Plan benefits is denied, you may file a formal claim appeal for Plan benefits with the Prudential. The claim appeal must be in writing and must be delivered or mailed to Prudential. The request for a review of the denial must be received by Prudential within 180 days after you receive notice of denial.

You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits, and you may submit written comments, documents, records and other information relating to your claim for benefits.

Prudential will review your claim after receiving your request and send you a notice of decision within 45 days after your request is received, or within 90 days if special circumstances require an extension. In the event an extension is required, Prudential will advise you prior to the end of the initial 45 day period, providing an explanation of the reasons for the extension, such as the need to hold a hearing.

When it issues the decision on appeal, Prudential will state the reasons for the decision and refer you to the relevant provisions of the Plan.

If the decision to deny the claim is upheld, the written decision will provide:

(a)    The specific reasons for denial;

(b)    A specific reference to the Plan provisions upon which denial is based;

(c)    A description of any additional information or material that you must provide in order to perfect the claim;

(d)    An explanation of why additional material or information is necessary; and

(e)    Notice of your rights for further review of the decision, including the right to file a lawsuit under Section 502 of ERISA.

LH0033

# Glossary

**Active employment** means you are working for your Employer for earnings that are paid regularly and that you are performing the material duties of your regular job. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

**Deductible sources of income** means income from deductible sources listed in the Plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your weekly gross disability payment.

**Disability earnings** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the Plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

**Doctor** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Any relative, including but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse will not be recognized as a doctor for a claim that you send to Prudential.

**Elimination period** means a period of continuous disability which must be satisfied before you are eligible to receive benefits under the Plan.

**Employee** means a person who is in active employment with the Employer for the minimum hours requirement.

LH0034

*Employer* means T-Mobile USA, Inc., and includes any division, parent, subsidiary or affiliate which is required to be considered a single employer together with T-Mobile USA, Inc. under the terms of Internal Revenue Code Section 414(b), (c), or (m).

*Employment waiting period* means the continuous period of time that you must be in a covered employment class before you are eligible for coverage under a plan.

*Gross disability payment* means the benefit amount before any deductible sources of income and disability earnings are subtracted.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

*Law or act* means the original enactment of the law or act and all amendments.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff or leave of absence.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, you will be considered able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Maximum period of payment* means the longest period of time payments will be made to you for any one period of disability.

*Occupational sickness or injury* means an injury arising out of, or in the course of, any work for wage or profit regardless of employer, or a sickness covered, with respect to such work, by any workers' compensation law, occupational disease law or similar law.

*Part-time basis* means the ability to work and earn between 20% and 80% of your weekly earnings.

*Payable claim* means a claim for which T-Mobile USA, Inc. is liable under the terms of the Plan.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Your occupation will be looked at as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

LH0035

*Temporary Employees* are employees who are hired directly by T-Mobile (instead of being engaged through a temporary services firm that acts as the person's employer for payroll purposes) to work for a limited, rather than indefinite, period of time. The duration of Temporary employment is based upon the needs of the Company. The maximum period of Temporary employment for T-Mobile is generally six months.

*Weekly benefit* means the total benefit amount for which an employee is covered under this plan subject to the maximum benefit.

*Weekly earnings* means your gross weekly income from your Employer as defined in the plan.

*Weekly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*You* means a person who is eligible for coverage under the Plan.

LH0036

41982, ASO STD, All Employees, Ed 5-2003, 2

LH0037

U#03091-0099

# ADMINISTRATIVE SERVICES AGREEMENT NO. 41982

### effective June 1, 2003

### between

## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
## (Prudential)

### and

## T-MOBILE USA, INC.
## (Purchaser)

The Purchaser has a Plan of Benefits as described in Exhibit A (herein called Plan) for the benefit of the classes of persons set forth in the Plan. The Purchaser desires Prudential to provide the Services set forth in Exhibit B with respect to the Plan. Prudential will perform these Services provided that the Purchaser makes payments for the Services as listed in Exhibit C. By their signatures below, Prudential and the Purchaser agree that this Agreement which follows is approved and its terms are accepted. The provisions on the pages which follow as listed on the Table of Contents are part of this Agreement.

Date: _____

Witness: _____

Livingston, NJ

November 6, 2003

-T-MOBILE USA, INC.-
_____
(Purchaser)

By: _____
(Signature and Title)

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA

By: _____
Vice President, Contracts

The authorized officers of Prudential and the Purchaser have executed this Agreement in duplicate.

LH0038

# TABLE OF CONTENTS

**AGREEMENT**

I.    GENERAL PROVISIONS

II.   OBLIGATIONS OF THE PURCHASER

III.  OBLIGATIONS OF PRUDENTIAL

IV.   AUDITS BY THE PURCHASER

V.    CHARGES FOR THE SERVICES

VI.   TERMINATION OF THE AGREEMENT

VII.  MISCELLANEOUS PROVISIONS

**EXHIBIT A - PLAN OF BENEFITS**

**EXHIBIT B - ADMINISTRATIVE SERVICES**

I.    CLAIM SERVICES

    A.    Claim Processing

    B.    Determination of Eligibility for Benefits

    C.    Claim Investigations or Audits

    D.    Recovery of Claim Overpayments

    E.    Vendor Services

II.   OTHER SERVICES TO BE FURNISHED IN CONNECTION WITH THE PLAN

    A.    Cost Analysis

    B.    Materials to be Furnished

    C.    Other Services

III.  REPORTING DATES

**EXHIBIT C - SCHEDULE OF CHARGES**

LH0039

# I.  GENERAL PROVISIONS

A.  **Fiduciary Duty:** It is understood and agreed that the Purchaser retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder, and that Prudential is empowered to act on behalf of the Purchaser in connection with the Plan only as expressly stated in this Agreement or as agreed to in writing by Prudential and the Purchaser. The Purchaser and Prudential agree that, with respect to Section 503 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Prudential will be the "appropriate named fiduciary" of the Plan for purposes of denial and/or review of denied claims under the Plan. In exercising its fiduciary responsibility, Prudential will have discretionary authority to determine eligibility for benefits as described in the Claim Services section of Exhibit B; to determine the amount of benefits for each claim received; and to construe the terms of the Plan. However, the Purchaser will have the sole and complete authority to determine eligibility of persons to participate in the Plan. Prudential will have no other fiduciary duties under the Plan.

B.  **Hold Harmless and Indemnification:** Prudential agrees to hold harmless and indemnify the Purchaser from any Indemnifiable Losses arising out of any function of Prudential under this Agreement, provided that it is determined that the liability therefore was the direct consequence of negligence, or of criminal conduct, fraud or other willful misconduct on the part of Prudential.

Except as described in the preceding paragraph, the Purchaser agrees to hold harmless and indemnify Prudential from any Indemnifiable Losses arising out of any function of Prudential under this Agreement (including but not limited to any Indemnifiable Losses arising from a breach of confidentiality in connection with any information or data relating to this Agreement released by Prudential to the Purchaser, or to any third party at the request of the Purchaser, or from any services performed under this Agreement).

The Purchaser further agrees to hold harmless and indemnify Prudential from any claim overpayment for which attempted recovery has been unsuccessful, which Prudential at its sole discretion has determined to abandon, and from any levy, assessment or tax arising from any benefit under the Plan or any service or transaction under this Agreement, but excluding any tax on earnings or capital gains.

As used in this Agreement, the term Indemnifiable Losses will include any claim, damage, lawsuit, settlement, judgment or penalty, including reasonable attorney's fees and court costs in connection therewith.

C.  **Lawsuits:** Either party to this Agreement which becomes aware of a lawsuit which might give rise to an indemnification under this Agreement will notify the other party promptly in writing of the details of such lawsuit, except that any delay or failure to so notify the party whose obligation it is to indemnify will only relieve that party of its obligations hereunder to the extent it is prejudiced by reason of such delay or failure.

Either party which has been named as defendant in such a lawsuit will retain the right to conduct its own defense. However, the parties may mutually agree that one of the two parties will be responsible for the mutual defense of both parties. In any event, the two parties will consult and cooperate with the objective of coordinating the overall defense of the case.

LH0040

If this Agreement terminates, the hold harmless and indemnification provisions above will continue to apply to any loss or cause of action arising out of any function of Prudential under this Agreement prior to its termination.

## II.  OBLIGATIONS OF THE PURCHASER

A.  **Furnishing Information:**  The Purchaser will have the obligation (1) to furnish any information required in accordance with Exhibit B when and as specified therein, (2) to establish and maintain any records required in accordance with that Exhibit, and (3) to furnish to Prudential such other information required by Prudential in order to provide the Services.

B.  **Prompt Discharge of Obligations:**  Prudential's performance of the Services will require prompt discharge by the Purchaser of such obligations.  Therefore, Prudential will not be considered to have failed to perform its obligations under this Agreement if any delay or non-performance is due, in whole or in part, to the Purchaser's failure to promptly discharge such obligations.

C.  **Authorized Persons:**  The Purchaser will provide Prudential with the names of individuals authorized to act for the Purchaser in connection with this Agreement, together with the scope of their authority.

D.  **Establishment of Account:**  The Purchaser will provide all funds for any benefits determined to be payable under the Plan and the cost of all vendor services arranged by Prudential in connection with the Claim Services as set forth in Exhibit B.  The Purchaser will comply with this funding obligation by making deposits to an account established for this purpose.

E.  **Banking Arrangements:**  Whenever Prudential determines that benefits are payable under the Plan or charges for vendor services arranged by Prudential have been incurred in connection with the Claim Services as set forth in Exhibit B, Prudential will issue a check drawn on a Custodian Account known as the PruMarc Account.  The PruMarc Account has been opened by Prudential as custodian for certain of its clients with respect to whom it furnishes administrative services in connection with uninsured benefit plans including, but not limited to, certain Purchasers entering into Administrative Services Agreements with Prudential.  In connection with the PruMarc Account:

1.  The Purchaser agrees to instruct its designated bank(s) to honor requests to inform Prudential of the balance in the Purchaser's account.

2.  The Purchaser acknowledges and agrees that Prudential may effect payments for benefits payable under the plan and payments for the cost of vendor services arranged by Prudential in connection with the Claim Services as set forth in Exhibit B, through the PruMarc Account with the bank designated by Prudential.

3.  The Purchaser authorizes and directs Prudential and its designated bank to prepare, execute and deliver Automated Clearing House Debits, and to instruct the Purchaser's bank(s) to honor all Automated Clearing House Debits when received.

4.  The Purchaser agrees to deposit available funds sufficient to pay in full all such Automated Clearing House Debits on the funding due date.

LH0041

5.   A Late Deposit Charge as described in Exhibit C will be payable to Prudential commencing on the first day in which available funds in the Purchaser's designated depository bank(s) are not sufficient to pay in full Automated Clearing House Debits.

## III.  OBLIGATIONS OF PRUDENTIAL

A.   Prudential will perform the Services set forth in Exhibit B on behalf of the Purchaser in connection with the Plan.

B.   On the reporting dates specified in Exhibit B, Prudential will report to the Purchaser the amount of the charges for the Services performed since the date of the last such report.

C.   Prudential will furnish such other reports as may be mutually agreed upon in connection with this Agreement.

D.   Prudential will maintain records used to perform the Services in accordance with Prudential's then current rules for maintenance of claim files and other records.

## IV.  AUDITS BY THE PURCHASER

A.   **Scheduling of Audit:**  The Purchaser may arrange for an audit at any time during the normal business hours of Prudential.  The audit must be scheduled with appropriate notice and based on a prearranged agenda agreed to in advance by the appropriate office of Prudential.

B.   **Inspection of Records and Information:**  To assist in the audit, Prudential agrees to permit the Purchaser to inspect proprietary information, and records and other information regarding claims for benefits submitted by persons covered under the Purchaser's Plan. Such information and records will be provided with due regard to the privacy of providers and of persons covered under the Plan.  The Purchaser agrees that:

1.   The information and records will not be used for any purpose other than the audit.

2.   The information and records will be kept confidential, including the final audit findings and summary.

3.   The information and records will not be removed from Prudential's premises and will not be duplicated or electronically recorded or recreated in any other manner.

4.   Specific information about a patient's health will not be made available by Prudential without the written consent of the employee and the patient (if they are not the same).

5.   The Purchaser will comply with all federal, state and local laws regarding the divulgence of certain types of health care information (e.g., with respect to AIDS).

6.   Prudential will have the right to review a draft of the audit findings, and, within thirty (30) days thereafter, to comment on those findings, before they are finalized.

7.   Prudential will have the right to review the final audit findings and summary, to have an exit interview, and to include with the audit report a supplementary statement containing facts that Prudential considers pertinent to the audit, but only if, and to the extent, Prudential produces and delivers such supplementary statement within thirty (30) days after receiving the findings and summary from Purchaser or auditor.

ASO-G3

LH0042

8.    The results of the audit will be for the Purchaser's exclusive use

C.    It is agreed that all expenses incurred by Prudential in connection with the audit will be inventoried and charged to the Purchaser.

D.    **Audits by Third Party:**  The Purchaser may choose a third party representative to perform the audit, other than a representative whose action, could, in Prudential's opinion, represent a conflict of interest.  If a third party representative is to perform the audit, this third party, the Purchaser and Prudential must agree in writing to the terms set forth above.

## V.   CHARGES FOR THE SERVICES

A.    **Payment of Charges:**  Charges for the Services will be in accordance with the Schedule of Charges set forth in Exhibit C.  Charges will be payable to Prudential by the Purchaser within thirty-one days after the billing date (the date on which Prudential releases a notice to the Purchaser requesting payment of the charges for the Services performed).  If the Purchaser fails to remit such payment to Prudential within thirty-one days after the billing date, a Late Fee Charge, as described in Exhibit C, will be payable to Prudential.  Also, at its option, Prudential may exercise its right to terminate this Agreement as described in the Termination of the Agreement section below.

B.    **Changes in Charges:**  Prudential may change the Schedule of Charges as of any date on or after June 1, 2005.  Prudential agrees to provide client with 120 days advance notification of rate or fee changes prior to the contract anniversary.  Prudential may also change the Schedule of Charges as of any date as a result of any modification of the Plan, or this Agreement, or any administrative procedure directly supportive of the Plan or this Agreement, as requested by the Purchaser and agreed to by Prudential.

If such a change is in connection with a modification of the Plan or this Agreement, or in an administrative procedure, it will become effective on the effective date of the modification.  If such a change is not in connection with a modification of the Plan or this Agreement, or in an administrative procedure, it will become effective on the date specified, provided Prudential has given notice of the change at least 90 days prior thereto, and unless the Purchaser notifies Prudential at least thirty days prior to such specified date of its intention to terminate this Agreement as of the date specified.

C.    **Acceptance of Late Payment:**  Any fee payment remitted to and accepted by Prudential more than thirty-one days after the billing date will not establish a course of dealing, or constitute a waiver or modification, or in any way alter, amend or affect Prudential's right to terminate this Agreement pursuant to the Termination of the Agreement section below.

## VI   TERMINATION OF THE AGREEMENT

A.    This Agreement will terminate upon the first to occur of the following:

1.    The expiration of thirty days after written notice has been given by Prudential or the Purchaser of its intention to terminate because of the other's breach of material obligations under this Agreement;

2.    The date specified in a written notice given by Prudential to the Purchaser of its intent to terminate this Agreement because of the Purchaser's failure to remit to Prudential charges for Services within thirty-one days after the billing date;

ASO-G4

3.  Termination of the Plan;

4.  Modification of the Plan, but such modification of the Plan will not operate to terminate this Agreement (a) if this Agreement is amended to make such modified plan the Plan under this Agreement or (b) while this Agreement is being continued, by mutual agreement between Prudential and the Purchaser, prior to such amendment;

5.  The expiration of the day prior to any billing date if either Prudential or the Purchaser has given at least thirty days prior written notice to the other of its intention to terminate this Agreement as of that billing date;

6.  The date a change in the Schedule of Charges is to become effective, in the event that the Purchaser notifies Prudential at least thirty days prior thereto of its intention to terminate this Agreement.

7.  The day following the third consecutive business day in which available funds in the Purchaser's designated depository bank(s) are not sufficient to pay in full Automated Clearing House Debits, Depository Transfer Checks, or drafts presented for payment requests for wire transfers in accordance with the Obligations of the Purchaser section of this Agreement.

B.  **Forwarding of Records:** In the event of termination of this Agreement, no further claims services will be furnished by Prudential except as mutually agreed to by Prudential and the Purchaser.  Prudential will forward to the Purchaser such records as the Purchaser may reasonably require for the administration of the Plan or any plan adopted in its place.  The cost incurred by Prudential for furnishing these records will be inventoried and charged to the Purchaser.

C.  **Continuation of Services**: If the Purchaser requests, Prudential will continue to process STD claims, provide customer service, and provide financial reporting for all STD claims incurred prior to plan termination date for a period not to exceed 12 weeks following contract termination.  Pricing for this run-out claims administration service will be determined based on the administrative charges in effect as of the termination date.


# VII. MISCELLANEOUS PROVISIONS

A.  This Agreement, including its Exhibits, may be changed by an amendment hereto signed by the Purchaser and an officer of Prudential.

B.  Any of the functions to be performed by Prudential under this Agreement may be performed by Prudential or any of its subsidiaries.  Any reference in this Agreement to Prudential will include its directors, officers and employees as well as the directors, officers and employees of any of its subsidiaries.

C.  Any references in this Agreement to the Purchaser will include its directors, officers, and employees acting in the course of their employment, but not as claimants.

LH0044

Agreement No. 41982
Effective Date:  June 1, 2003

# EXHIBIT A
## Plan of Benefits

The term "Booklet" wherever used below refers to the document describing the Purchaser's "Plan of Benefits" for the classes of persons indicated.  The Plan of Benefits for each class of persons indicated is determined by:  (1) the Booklet that applies to that class; and (2) any modification to that Booklet, provided the modification is listed below or is included in an amendment to this Administrative Services Agreement.

**Covered Class:**

All Employees included in the Covered Classes of the Plan of Benefits listed below.

### Plan of Benefits that Applies to this Covered Class:

(1)  The Coverage(s) described in the Plan of Benefits prepared for the Agreement shown above:

(a)  With the Program Date of June 1, 2003;

(b)  and bearing the code "41982, ASO STD, All Employees, Ed 5-2003, 2".

ASO-A1

LH0045

Agreement No. 41982
Effective Date:  June 1, 2003

## EXHIBIT B
## Administrative Services to be Furnished by Prudential

## I.    CLAIM SERVICES

A.    **Claim Processing:**  While the Agreement is in effect, Prudential will accept for processing and payment or denial those claims for benefits under the Plan for which proof of a claim is furnished, in a form satisfactory to Prudential.

For the portion of the Plan which provides for payment at periodic intervals, proof of claim must be furnished to Prudential not later than ninety days after the end of the month or a lesser period.  However, Prudential may at its discretion accept any claim which is submitted after the expiration of said ninety days.

Prudential will determine, in accordance with the provisions of the Plan, the amount of benefits, if any, payable for each such claim received.  In administering claims under the Plan, Prudential will provide adequate notice in writing to any person whose claim for benefits has been denied, setting forth the specific reasons for such denial, and will afford a reasonable opportunity to any person whose claim for benefits has been denied for a full and fair review by Prudential of the decision denying the claim.

B.    **Determination of Eligibility for Benefits:**  Prudential will determine a claimant's eligibility for benefits under the Plan based on information furnished to Prudential.  Such information identifying by name the persons then participating under the Plan, the effective dates of their participation and the extent of their coverage under the Plan will be furnished by the Purchaser, in a form satisfactory to Prudential, as of the effective date of the Agreement and subsequently during the continuance of the Agreement on the dates specified in the Reporting Dates section of this Exhibit.  The Purchaser will hold Prudential harmless from any Indemnifiable Loss arising from Prudential's use of such information.

C.    **Claim Investigations or Audits:**  Prudential may, at its option, investigate or audit any claim  or have the claimant examined by a physician or have the claimant examined by a physician during pendency of claim.  The selection of claims and frequency for audit will be determined by Prudential, but Prudential will also consider for audit other claims when requested by the Purchaser.  Any such audit may be performed by an independent agency selected by Prudential.

D.    **Recovery of Claim Overpayments:**  If and when Prudential becomes aware of a payment made for an amount in excess of the amount properly payable under the Plan, Prudential will take appropriate action, in accordance with Prudential's standard procedures, to attempt to recover the excess payment.  Prudential will not be required to enter into litigation to obtain a recovery.

LH0046

Any amounts so recovered will be payable to Prudential.  Prudential will deposit the net amount of the recovered overpayment in the Purchaser's account to the credit of the Purchaser and will periodically report to the Purchaser the total of the amounts recovered since the last such report.  The net amount of the recovered overpayment is the overpayment recovery amount less the fee charged by the overpayment recovery services vendor.

E.    **Vendor Services:**  Prudential may, at its option, arrange for a vendor to provide services in connection with the Claim Services set forth in this Section.  Prudential will arrange to pay from the PruMarc Account as described in the Obligations of the Purchaser, Banking Arrangements section of the Agreement, any fees that may be charged by those vendors.  The services for which vendors may be used include, without limitation, the following:

1.    the independent medical examination of a claimant;

2.    obtaining medical records from any of a claimant's physicians;

3.    physician consultation and review of a claimant's records;

4.    overpayment recovery services;

5.    rehabilitation services;

ASO-B2

LH0047

## II.  OTHER SERVICES TO BE FURNISHED IN CONNECTION WITH THE PLAN

### A.  Cost Analysis

1.  Upon request of the Purchaser and receipt of any required information, Prudential will furnish to the Purchaser an estimate of the benefit cost of any proposed modification or extension of the Purchaser's Plan of Benefits described in Exhibit A.  In connection therewith, Prudential will notify the Purchaser of any changes in the Schedule of Charges under the Agreement which would be required if the Plan under the Agreement were so modified or extended.

2.  Annually, Prudential will furnish to the Purchaser an analysis of the experience of the Plan which will include:

    a.  An estimate of incurred but unreported claims.

    b.  Benefit costs for the immediately preceding term of the Agreement.

    c.  Data required for compliance with governmental reporting requirements. Prudential will also provide standard account reporting services on Prudential's protected website.

### B.  Materials to be Furnished:  Materials will be of the type normally prepared by Prudential for the purpose intended unless special materials are requested by the Purchaser.

1.  Prudential will, where requested by the Purchaser, prepare and furnish to the Purchaser:

    a.  For distribution to persons participating under the Plan, booklets and/or other communication material which will describe the benefits and such other conditions of the Plan as are agreed to by Prudential and the Purchaser.

    b.  A supply of forms to be used for submission of claims for benefits under the Plan and instructions for their use.

    c.  A supply of forms to be used in administering the Plan and instructions for their use.

2.  Revisions of the booklets and/or other communication material will be prepared whenever required by revisions in the Plan under the Agreement and when requested by the Purchaser.

3.  Prudential will also prepare the text of any amendments to the Agreement, including any amendment changing the Plan under the Agreement.

### C.  Other Services

1.  **Medical Exams or Inspection Reports:**  If the Purchaser requires information as to the health of any persons applying to participate in the Plan or to have their benefits thereunder increased, Prudential will furnish forms to be used to elicit such information and will review and evaluate such information on the basis of its experience in such matters and the results desired by the Purchaser.  If requested by the Purchaser, Prudential will also arrange for and/or evaluate medical examinations or inspection reports as to such persons.

LH0048

2. **Benefit Plan Design:** Prudential will, taking into account trends in employee benefits and costs, assist the Purchaser in the design of its Plan of Benefits described in Exhibit A and any desired revisions thereof.

III. **REPORTING DATES as of which Required Information will be Furnished by the Purchaser and Reports will be Made by Prudential to the Purchaser:**

July 1, 2003 and the first day of each month thereafter.

ASO-B4

LH0049

Agreement No. 41982
Effective Date:  June 1, 2003

## EXHIBIT C
## Schedule of Charges

A.  **Basic Fee:**  All services other than those described in B., C., D. and E. below:

$1.95 per employee covered under the Plan of Benefits, per month.

B.  **Claim and Administration Forms:**  Any service provided in connection with producing claim forms and administration forms, other than those normally provided by Prudential:

Actual cost as inventoried.

C.  **Communication Material:**  Any service provided in connection with producing booklets or other communication material, other than the preliminary draft and one revision thereof:

Actual cost as inventoried.

D.  **Purchaser's Audit:**

Actual cost as inventoried, as determined at an hourly rate.

E.  **Additional Reports Requested by the Purchaser:**

Actual cost as inventoried.

F.  **Late Fee Charge:**

For each fee payment remitted to Prudential more than thirty-one days after the billing date:  1% of the billed amount for each month or portion thereof that it is overdue.  Such late fee charge will commence on the thirty-second day after the billing date.

G.  **Late Deposit Charge:**

An amount computed at the rate of 1.5% of the Amount Due for each month or portion thereof that is overdue.  The Amount Due is the amount required to pay in full Automated Clearing House Debits.

LH0050

Claim Ltrs, SOAP Notes
and
Tel. Log